IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ELIZABETH J.[1]**

           Plaintiff,

    v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

           Defendant.

Civ. No. 1:22-cv-00475-CL

**OPINION AND ORDER**

---

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Elizabeth J. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income ("SSI"). Full consent to magistrate jurisdiction was entered on March 29, 2022 (Dkt. #4). For the reasons provided below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

## BACKGROUND

Plaintiff is twenty-four years old and alleges she is unable to work due to mental and physical impairments. Tr. 186.[2] Plaintiff filed an application for SSI on May 17, 2019. Tr. 184. In her application, Plaintiff claimed disability with an alleged onset date of June 10, 2015. Tr. 186. The claim was denied initially on September 10, 2019, and upon reconsideration on May 13, 2020. Tr. 54-68, 70-88. A hearing was held on March 24, 2021, before Administrative Law Judge ("ALJ") John Sullivan. Tr. 33-52. On April 16, 2021, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled from the alleged onset date through the date of decision. Tr. 27. On April 16, 2021, the Appeals Council denied review, making the ALJ's decision the final agency decision. Tr. 1-3. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

---

[2] Citations to "Tr." Are to the Administrative Record. (ECF 11).

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a.  The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since May 17, 2019, the application date. Tr. 18.

2. Plaintiff has the following severe impairments: generalized anxiety disorder with panic attacks and agoraphobia; posttraumatic stress disorder; depressive disorder; and irritable bowel syndrome (20 C.F.R. § 416.920(c)).

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of on of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). Tr. 18

4. Plaintiff has the residual functional capacity to perform "a full range of work at all exertional levels" but with non-exertional limitations of: understanding,

remembering, and carrying out instructions limited to performing simple, routine

tasks; using judgment and dealing with changes in the workplace would be limited to

simple, work-related decisions; and interacting with supervisors, coworkers, and the

public on an occasional basis. "As a result of moderate impairment in concentration,

persistence, and pace, as well as moderate impairment in understanding,

remembering, and applying information, the claimant would be off task 5% or less

scattered throughout the workday. The claimant must have ready access to a restroom

or be able to perform the work while wearing adult sanitary garments." Tr. 20.

5.  Plaintiff has no past relevant work. Tr. 26.

6.  Plaintiff has a high school education. Tr. 26.

7.  Considering Plaintiff's age, education, work experience, and RFC, there are jobs that

exist in significant numbers in the national economy that plaintiff can perform, such

as a cleaner of laboratory equipment, wall cleaner, and hand packager. Tr. 26.

8.  Plaintiff has not been under a disability, as defined in the Social Security Act since

the alleged onset date. Tr. 27.

## 9.  STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper

legal standards and the legal findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see

also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence ... is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). "Where the evidence is

susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."

*Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff asserts that remand is warranted because the ALJ erred in his RFC determination because:

1. The ALJ erred in his assessment of the medical opinion evidence;

2. The ALJ did not discount Plaintiff's subjective symptom testimony for clear and convincing reasons; and

3. The ALJ failed to develop the record. Pl. Br. 1-4.

6 - Opinion and Order

For the following reasons, the Court finds that the ALJ erred. The decision of the Commissioner is reversed and remanded for further proceedings.

## 1.    The ALJ erred in evaluating and crediting the medical opinions.

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on March 2, 2018. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c).

Other medical opinions in the record include: (1) Scott Alvord, Ph.D., the State of

Oregon Disability Determination Services' psychological evaluator (Tr. 539); (2) James Buskirk,

M.D., and Abesie Kelly, Ph.D., the State agency psychological consultants for Plaintiff's

application at the initial and reconsideration levels (Tr. 61, 80); and (3) Lawrence Landwehr,

M.D., and William Harrison, M.D., the State agency physical medical consultants for Plaintiff's

application. (Tr. 68, 83).

## A.    The ALJ did not err in reasoning that Plaintiff's syncope was a symptom and including limitations in Plaintiff's RFC.

Lawrency Landwehr, M.D., and William Harrison, M.D. were State agency physical

medical consultants for Plaintiff's application at the initial and reconsideration levels. Tr. 68, 83.

The ALJ found their opinions unpersuasive due to attributing "postural and environmental

limitations to the claimant's history of syncopy . . . ." Tr. 25, 63, 82, 83). The ALJ did not assess

a medically determinable impairment of syncope because "there is only one documented event of

syncope in the record, and this occurred in 2018, prior to the application date." Tr. 25.

On October 13, 2018, Plaintiff presented to the Emergency Room symptoms of syncope

after complaining of "feeling lightheaded and nauseated[,]" causing her to fall down stairs,

where she again appeared to have syncopal episodes upon trying to get up and make it to the

bathroom. Tr. 339. The attending on Plaintiff's record noted that they "think [Plaintiff's]

dehydration was the basis for her syncope." Tr. 342. Though syncope was noted as an associated

symptom during a different Emergency Room visit for abdominal pain on April 18, 2019, the

October 13 episode was the only recorded moment of syncope in the record. Tr. 327. Thus,

Plaintiff does have a history of syncope providing a medically determinable impairment.

However, the ALJ did include this symptom in his RFC determination. Tr. 24 ("Possible syncope

has been considered in determining the claimant would be off task 5% or less scattered

throughout the workday."). The ALJ's interpretation of Plaintiff's alleged syncope was reasonable and contains no error.

**B.    The ALJ erred in partially crediting limitations from Dr. South's opinion, which was inconsistent with other medical opinions in the record.**

Plaintiff contends that the ALJ erred in his assessment of Dr. Susan South's opinion because it was from "almost four years ago" and was inconsistent with the other medical opinions in the record. Pl. Br. 4.

Susan South, Ph.D., evaluated Plaintiff's prior disability application on October 3, 2017. Tr. 91-101. Dr. South opined that Plaintiff would struggle with complex tasks and noted that Plaintiff "is capable of cursory supervisor contact and would benefit from an understanding supervisor . . . [and] is capable of cursory coworker contact . . . [but] incapable of greater than occasional general public contact . . . ." Tr. 99. Dr. South did not limit Plaintiff in her ability to complete a normal workday or workweek. Tr. 99. Dr. South opined that the other medical opinion on record, Dr. Alvord's (discussed below) was unsupported. Tr. 100. Dr. South based this opinion from her evaluation that Plaintiff's record showed that Plaintiff presented herself neatly, was able to maintain eye contact and communicate effectively, even though soft-spoken, and her memory and abstract thinking was intact. Tr. 95. Dr. South also noted that Plaintiff had friends she went shopping and to the movies with and planned to attend prom, she had summer vacation plans in other states, attended high school with some accommodations, had plans to eventually work as a vet secretary and to get her drivers permit, and she was not currently on anxiety medication. Tr. 95.

The ALJ was "generally persuaded" by Dr. South's opinion, opining that "it does not reflect the last three or four years of treatments," but the ALJ primarily used this opinion in Plaintiff's RFC formulation. Tr. 20, 25.

The ALJ did not adequately support his decision to find Dr. South's opinion mostly persuasive while disregarding the other medical opinions. Firstly, Dr. South's opinion is inconsistent from the other medical opinions in the record. A month prior to Dr. South's opinion, Scott Alvord, Psy.D., evaluated Plaintiff on referral by the State of Oregon Disability Determination Services. Tr. 539. Dr. Alvord also limited Plaintiff in her ability to complete more than simple tasks or have more than limited contact with co-workers or the public. Tr. 543. However, Dr. Alvord further limited Plaintiff in her ability to attend work regularly or complete a normal workday or workweek. Tr. 543. The ALJ simply stated that he found Dr. Alvord's opinion "somewhat persuasive" because Plaintiff was refusing psychiatric medication at the time and the opinion did not reflect Plaintiff's later improvement. Tr. 25. This exact criticism by the ALJ applies to Dr. South's opinion as well. The ALJ gave no reason for finding Dr. South's limitations more convincing or acceptable than Dr. Alvord's limitations on Plaintiff. Tr. 25.

Secondly, Dr. South's opinion is inconsistent from the State agency psychological consultants on Plaintiff's disability application, both on initial and reconsideration levels. Tr. 61, 80. Both opinions limited Plaintiff to being "capable of limited to no interaction with the general public." Tr. 65, 85. The ALJ was "not fully persuaded" by their opinions because he was "not persuaded that the claimant is capable or only 'limited to no' interaction with the general public" because Plaintiff's improvement showed otherwise.[3] Again, the ALJ gave no reasoning for discrediting these opinions over Dr. South's limitations, even though these opinions occurred years later in 2019 and 2020 and the same supposed Plaintiff improvement applied. Overall, the ALJ did not support his decision in finding Dr. South's opinion on Plaintiff's limitations more convincing than the other medical opinions in the record. The Court finds the ALJ erred.

---

[3] Regarding Plaintiff's improvement, this is discussed below pertaining to Plaintiff's subjective symptom testimony.

10 - Opinion and Order

2.    **The ALJ provided clear and convincing reasons to discount Plaintiff's subjective symptom testimony.**

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

A.    **Treatment**

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining

11 - Opinion and Order

eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

2006). Symptom improvement, however, must be weighed within the context of an "overall

diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester

v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not

inconsistent with disability.").

The ALJ reasoned that Plaintiff's routine, conservative treatment and shown

improvement in her counseling records provide clear and convincing reasons for discounting her

testimony. Tr 21-23. The ALJ also stated that "[i]t is notable that the claimant has had significant

gaps in her care, and that she has not required psychiatric hospitalization or intensive outpatient

treatment." Tr. 22. The ALJ further reasoned "[t]hat the claimant has not sought increasing

dosages and changing medications may be an indication that her symptoms are not as intense and

persistent." Tr. 22.

An independent review of the record establishes that the ALJ erred, in part, in evaluating

Plaintiff's treatment. While the ALJ states that Plaintiff not seeking increasing medications

indicates conflict with her alleged symptoms, the ALJ later stated that "pursuit of treatment

weigh[ed] in the claimant's favor," conflicting his own statement. Tr. 22. Furthermore, though

the ALJ stated that Plaintiff did not seek increases in medication, the ALJ himself noted that

Plaintiff has consistently taken an SSRI prescription since June 2018, which was increased in

October 2020 after she reported decreased efficacy. Tr. 22, 308, 492. This information conflicts

with the ALJ's reasoning but does not conflict with Plaintiff's testimony.

Furthermore, Plaintiff's gaps in treatment are not clear and convincing reasons for

discounting Plaintiff's testimony. Plaintiff testified that she sometimes did not leave the house

"for months." Tr. 43. She testified that she only felt comfortable leaving her house after taking

antidiarrhea medication, but "it wasn't good for [her] physical health taking it all the time" and she continued to have panic attacks when leaving home. Tr. 43. Plaintiff stated that her doctor recommended she try to go out, which "was really hard" because she could not go out alone and would "have severe panic attacks" and "shut down and cry and . . . be [un]able to move . . . ." Tr. 44. Plaintiff's testimony does not conflict with the ALJ's noted gaps in treatment. Tr. 22.

Plaintiff's improvement with treatment, in part, does conflict with Plaintiff's testimony. Plaintiff's records show that Plaintiff also of uncontrollable "bouts of depression and anxiety that come out of nowhere[,]" increased episodes of "crying, difficulty performing activities of daily living . . . fleeting suicidal thoughts . . . [and] difficulty with sleeping." Tr. 487, 489-90. However, from the same period, Plaintiff's testimony and counseling records show that, with encouragement from her providers, she sought social interaction, attempted to leave home with the help of friends, went to a party, sold artwork to a local gallery, and moved in with and married her significant other. Tr. 47, 465, 472, 480, 485. These records do conflict with Plaintiff's testimony as to her anxiety being too debilitating to leave home.

Plaintiff's seeking treatment also conflicts with her testimony. Plaintiff testified that she has to take precautions to travel locally, would "just go to the store, the local store and go home" with a friend, and that she was not discussing with her doctors seeking treatment with a different provider in another city. Tr. 44-47. She testified that not taking precautions resulted in severe panic attacks, shutting down, being unable to move, overheating, and sickness. Tr. 44, 47. On independent review, however, Plaintiff's records conflict with these claims. In June and December 2018, Plaintiff's general practitioner noted that Plaintiff was encouraged to seek counseling for mental health in Coos Bay or North Bend, but Plaintiff denied being able to seek this treatment because "she cannot go all the way over[,]" it was "just too far for her to prepare

for mentally[,]" and "she cannot make it that far because of the anxiety and diarrhea." Tr. 294,

307. However, Plaintiff's later records from 2019 and 2020 show that Plaintiff did travel to

North Bend and Coos Bay for reoccurring treatment. Tr. 358-69, 388-437.

In sum, the ALJ erred in reasoning that Plaintiff's medication records and gaps in

treatment provided clear and convincing reasons to discount Plaintiff's testimony. However,

Plaintiff's improvement did provide reason clear and convincing reason for discounting

Plaintiff's subjective symptom testimony.

**3.      The ALJ did not err in his duty to develop the record.**

Plaintiff contends that the ALJ should have further developed the record regarding

Plaintiff's mental limitations. Pl. Br. 3. The ALJ in a social security case has an independent

"'duty to fully and fairly develop the record and to assure that the claimant's interests are

considered.'" *Smolen*, 80 F.3d at 1288 (*quoting Brown v. Heckler*, 713 F.2d 441, 443 (9th

Cir.1983)). This duty extends to the represented as well as to the unrepresented

claimant. *Id.* When the claimant is unrepresented, however, the ALJ must be especially diligent

in exploring all the relevant facts. *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir.1978). Ambiguous

evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of

the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen*, 80 F.3d at

1288; *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998). The ALJ may

discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting

questions to the claimant's physicians, continuing the hearing, or keeping the record open after

the hearing to allow supplementation of the record. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th

Cir.1998); *Smolen*, 80 F.3d at 1288.

Here, the Court finds that the ALJ fulfilled his duty to develop the record by taking steps such as obtaining verbal assurance form Plaintiff's attorney at the start of the hearing that the record was complete and, due to Plaintiff's young age, giving Plaintiff's counsel "a great deal of additional latitude in developing the record" at the hearing. Tr. 40. Plaintiff contends that the ALJ erred by not ordering a current psychiatric consultative examination. Pl. Br. 3. However, the decision to order a consultative examination is left to the discretion of the ALJ. *See* 20 C.F.R. § 416.919a ("If we cannot get the information we need from your medical sources, we *may* decide to purchase a consultative examination.") (emphasis added). Moreover, it is ultimately Plaintiff's burden to prove disability, not the ALJ's. 20 C.F.R. § 416.912(a). Thus, the Court finds the ALJ fulfilled his obligation and did not commit harmful error by not ordering a consultative examination.

4.    **Remedy**

Plaintiff requests remanding the case for further proceedings, including a current psychiatric evaluation. Pl. Br. 8. A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel,* 211 F.3d 1172, 1179 (9th Cir. 2000). "Generally, when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura,* 537 U.S. 12, 16 (2002)). Here, a remand for further proceedings is appropriate. As discussed above, the ALJ failed to properly evaluate the medical opinions in the record. However, as the ALJ's decision and Plaintiff's brief noted, Plaintiff's last in-person

15 - Opinion and Order

psychiatric evaluation occurred in September 2017. All medical opinions are from 2017 and 2019, but Plaintiff's improvement is shown in counseling records from 2019 through 2020. Therefore, further proceedings would serve the useful purpose of assessing the evidence of Plaintiff's current functioning pertaining to her irritable bowel syndrome, anxiety, and agoraphobia. On remand, the ALJ must order a current psychiatric evaluation and a medical expert to testify and reassess the medical evidence. The ALJ should also take new testimony from a vocational expert.

## ORDER

Based on the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

It is so ORDERED and DATED this ___19___ day of October, 2023.

MARK D. CLARKE
United States Magistrate Judge